1819.

Coomes
vs
Clements

---

June.

COOMES, *et al.* vs. CLEMENTS.

F T C, by his will dated in 1817, bequeathed the whole of his personal estate away from his wife, but devised to her a part of his real estate, and died leaving no child or descendant. The wife renounced the will. *Held*, that she was entitled to one half of his personal estate, after the payment of his debts.

APPEAL from a decree of the Orphans Court of *Anne-Arundel* County. The case was this:—*Francis T. Clements*, (the husband of the appellee,) by his will dated in 1817, disposed of the whole of his estate, both real and personal. A part of the real estate he devised to his wife, but bequeathed no portion of his personal estate to her. She renounced the will, and by her petition to the orphans court, claimed one half of the personal estate, the testator having died leaving no child or descendant. The orphans court decreed in her favour. From that decree the appellants, claiming as legatees under the will, appealed to this court.

The cause was argued before CHASE, Ch. J. and JOHNSON, MARTIN, and DORSEY, J.

*Winder, Chapman* and *Marriott*, for the Appellants. They contended, 1. That by the common law of *England*, at the time of the colonization of *Maryland*, a man had a right to dispose of the whole of his personal estate, by will, to the exclusion of his wife, if he thought fit to do so. They cited *Register of Writs*, 142. 4 *Coke's Inst.* 32. *Somner on Gavelkind*, 91. 1 *Swinb.* 300. 4 *Reeves' Hist. E L.* 82. *Reeves' Dom. Rel.* 1, 37. 2 *Blk. Com.* 495. 3 *Bac. Ab.* tit. *Executors*, &c. (F) 53, 54, (E) 35, (H 5) 67, (I) 71.

2. That it was the common law of *England*, and not the customs of particular places, which our ancestors brought with them at the time of their emigration and co-

1819.

Coomes
vs
Clements

lonization; and which has been since used and practised under.

3. That the common law, with respect to the right of the husband to deprive his wife of any share in his personal estate, by his will, has never been changed by any act of assembly, either of the province or of the state. They referred, among others, to the acts of 1699, *ch.* 14; 1704, *ch.* 20; and 1715. *ch.* 39.

4. That if originally the common law secured to the wife a portion of her husband's personal estate, that law was changed before the colonization of the province. 2 *Blk. Com.* 491.

*Pinkney, Taney, Magruder,* and *Stephen,* for the Appellee. They contended, 1. That a widow was entitled to a certain share of the personal estate, independent of the will of her husband—to what the law terms her reasonable part. Such was the common law at the time of the colonization of *Maryland.* They cited *Glanvil,* 51, 52, (in the reign of *Hen.* II.) *Magna Charta, ch.* 18, (9 *Hen.* III.) *Bracton,* 60, 61, (*Hen.* III.) *Fleta,* 123, 124, (*Edw.* I.) *Fitz. N. B.* 284, (*Hen* VIII.) *Finch,* 175, (*Car.* I.) 2 *Blk. Com.* 493, 516. 4 *Burn's E. L.* 323, 324, 326, 327; and *Griffith vs. Griffith's Ex'rs.* 4 *Harr. & M'Hen.* 101. The question, they insisted, was conclusively established in the last case. The *dictum* of Lord *Coke* is at war with the authorities on which he relies. *Somner* is not authority. With respect to the cases referred to, which goes to show that the executor was entitled to the *residuum,* and if no executor, the administrator, will be of no aid to the appellants. *Residuum* of what? Of all that could pass by the will, after payment of debts and legacies. But the widow's part could not pass by the will; it was therefore no portion of that *residuum* to which the executor or administrator was entitled. 2 *Blk. Com.* 494. *Toller,* 79. This right of the widow, it has been contended, where it prevailed, was founded on special custom, but was at war with the common or general law of the realm. Now if this was the case, the authorities would tell us in what parts of the kingdom the common law prevailed. A special custom is an exception to the general rule, confined to some small portion of the kingdom. Here all the authorities cited on either side, show that this law, by whatever name you call it, general or special, prevailed in divers and very many parts of the kingdom, and none of them state a single county or place in which a different law prevailed. If it be founded on special custom, why should it have prevailed so extensively? If the common or general law was otherwise, why can none of us discover any part of the kingdom in which this common or general law existed as the law of the kingdom? In *Griffith vs. Griffith,* the widow's claim was founded on the common law. It was not pretended that she claimed under any act of assembly; and there is no reason why that decision should now be reversed.

2. To show that the acts of assembly are a clear recognition of the common law, and the right of the widow to a portion of her husband's estate, independent of his will, they referred to the various acts of assembly in regard to the subject of widow's rights. That the strong analogy between the acts of 1704, *ch.* 20, and 1715, *ch.* 39, *s.* 4, 5, and the customs of *England*, proves that those acts were taken from and founded upon those customs.    *Swinb.* 204 to 219.    If the decision of the court in *Griffith vs. Griffith* was correct, or is not now to be disturbed, it necessarily follows that the appellee in this case is entitled to one half, there being no child.    This has been the law of *Maryland* while a province, and since. It appears by the acts of 1704 and 1715, that a part of the common law was introduced. These acts stated that widows claimed not only what was left them by their husbands, but their shares under the law besides.    This was the practice from the first settlement of the province until 1699, when the legislature said the widow must make her election, and should not take both. The widow had no right to make such a claim, unless the common law gave it to her. Her right was acknowledged by the legislature, and yet it had no foundation, unless it was a part of the common law.    The legislature always admitted the widow's *right*; though there are acts of assembly, passed at different times, varying the *quantum of her interest*.    Sometimes she is considered entitled to one half in addition to the provision made for her by her husband; sometimes is forbidden to claim both, and sometimes, instead of one half, she is to receive only one third. But her right was never denied or repealed; and there existed, at the death of Mr. *Clements*, no act of assembly to alter the *quantum* of his widow's interest, unless the act of 1798, *ch.* 101, can be shown to have that effect. This case is not within the letter or spirit of that act. It says, *(sub ch.* 13,*)* that every devise or bequest to the wife shall be construed to be intended in bar of her dower in lands, or share in the personal estate, unless it be otherwise expressed in the will, unless she renounce, and by renouncing she shall be entitled to one third of the personal estate, *and no more.*    This embraces the single case of a bequest renounced by the widow.    Here there was no bequest, and could be no renunciation.    The subsequent clause of that *sub chapter*, proves that her right was not to be impaired except in the single case of *a renunciation* of a *valid* bequest.

The Judges delivered their opinions *seriatim.*

CHASE, Ch. J.    The common law of *England* is the common law of this state, excepting such changes as have been made by the acts of the legislature. The *common law* pervaded the whole realm of *England*, and was co-extensive with its limits.    Some peculiar local customs prevailed within the realm in certain cities, places and districts, in derogation of the common law, and were considered as privileges appertaining to each city or district, and were of no validity elsewhere.    The origin of these customs cannot be

well ascertained, but were claimed and pertinaciously adhered to as the law of each respective city or district.

I consider it established by the decision in the case of *Griffith vs. Griffith's Ex'rs.* 4 *Harr. & M'Hen.* 101, that it was the common law of *England,* at the colonization of *Maryland,* or the grant of the charter to *Maryland,* and long antecedent to that time, that a widow was entitled to her reasonable part of the goods of her husband, his debts and funeral expenses having been first deducted; and that that reasonable part was one third, or one half, according to the predicament in which she stood at the time of the death of her husband; that this reasonable part was not subject to the dominion or control of her husband; that her right was paramount his power, and that he could not, by his will, deprive her of it.

Although the common law did undergo some change in *England,* by imperceptible degrees, as to the reasonable part of the children, yet the time and manner of such change cannot be defined with any precision, or in a satisfactory way. It is certain, beyond a doubt, that no change ever took place in the common law, as to the reasonable part of the widow, before the colonization of *Maryland.* The right of the widow stands on the immutable principles of justice, and has been repeatedly sanctioned by the various acts of the legislature, modifying the right at some times without making any essential alteration.

As soon as the marriage is solemnized, all the personal property of the wife, by operation of law, is vested absolutely in the husband, no longer subject to her control or disposition. She cannot dispose of any part by her will, not even to her child, friend, or dearest relation, without the assent of her husband. This is the fair, the good consideration on which the right of the wife is founded. She who, with a liberal hand, and generous heart, gives all, is well entitled, when her husband can enjoy it no longer, to a third or one half.

The several acts of assembly relating to the right of the wife to a part of the personal estate of her deceased husband, commencing with the act of 1699, down to the act of 1798, contain a clear, unequivocal, and explicit recognition of that principle of the common law, which allows to the wife a reasonable part of the personal estate of her deceased husband. The following deductions are plainly inferrable from those acts. If the deceased dies intestate, leaving a wife, and without a child, the widow shall have one half of the personal estate. If the deceased makes a will, and makes no bequest of any part of his personal estate to his wife, or an invalid or inoperative bequest to her, and dies, leaving a wife and no child, she shall have one half of the personal estate; because, as respects his wife, he dies intestate; and this is in accordance with the decision in the case of *Griffith vs. Griffith's executors,* and is the just and sound exposition of the act of 1798, which declares, that it is consonant to justice that a widow accepting or

abiding by a devise, in lieu of her *legal right*, shall be considered as a purchaser with a fair consideration, if the devise proves invalid or inoperative. A purchaser of what? Her share or legal right, because that which was intended as an equivalent has proved to be of no value, and he dies intestate of his personal estate as to his wife. Her share, or legal right, depends on the predicament in which she stands at the time of the death of her husband, which *will* be one half, or one third; one half if he died leaving no child, and of that she is declared to be a purchaser with a fair consideration.

I am of opinion, that the decree of the orphans court ought to be affirmed.

JOHNSON. J. By the decision in the case of *Griffith vs. Griffith's Executors*, as reported in 4 *Harr. & M·Hen.* 101, the common law of *England*, as it existed on the settlement of *Maryland*, was adjudged to give to the widow a portion of the personal estate, whether the husband did or did not leave a will.

The various acts of assembly passed in *Maryland* recognize the right of the widow; the extent of the interest in certain instances has been ascertained; and where a case presents itself, coming within those specified cases, the widow's interest must be governed by them.

The act of 1798, *ch.* 101, passed before the will in question was made, restricts the widow's interest, whether children or not, to one third in the cases to which the restriction applies. The case before the court does not come within the restricted exception mentioned in the act; and as the testator died without leaving children, or their representatives, I am of the opinion the decision of the orphans court, giving her one half, was correct.

MARTIN, J. concurred.

DORSEY, J. I consider the case of *Griffith vs. Griffith's Executors*, as establishing principles by which the controversy in this case must be settled. If the point had been *res nova*, I should have pondered before I decided that the common law of *England*, at the time of the settlement of *Maryland*, gave to a widow a part of the personal estate of her husband, in opposition to his will, but as that, and other points directly bearing on the question now before the court, have been settled in the case referred to, I must bow to its authority. I am therefore of opinion that the decree of the orphans court ought to be affirmed.

DECREE AFFIRMED.