SAMUEL W. THOMAS
vs.
WOOD, EX'R OF HARRISON.

WOOD, EX'R OF HARRISON,
vs.
SAMUEL W. THOMAS ET AL.
(CONSOLIDATED.)

SEPTEMBER TERM, 1848.

[CONVERSION—FAILURE OF DEVISE TO WIDOW—MANUMISSION—ADMINISTRATION DE BONIS NON.]

LANDS devised to be sold are turned into money, and considered, in equity, as personal estate.

A testator devised his lands to his executors to be sold, and gave a legacy of $2000 to his niece, to be paid her out of the proceeds of the sale of his real estate. HELD—

That the surviving husband of the niece, had the same title to demand this legacy bequeathed his wife, as if it had been payable out of the personal estate of the testator ; and, that it made no difference whether the wife died before or after the sale actually took place.

A partial failure of a devise to a widow who abides by the will, will not entitle her to compensation out of the residue of the estate, unless the failure is to such an extent, as to make what she receives under the will, less in value than her legal share of her husband's estate.

When it is said in the act of 1798, ch. 101 ; sub. ch. 13, sec. 5, that a widow standing by the will of her husband, is to be considered as a purchaser with a fair consideration, it cannot be meant, that she is so to be regarded, whatever may be the extent of the devise to her.

But, the sound and just rule must be, that she is to be considered a purchaser of the devise, to the value of her share or legal right.

The whole of the testator's property will, in equity, be charged with the payment of his debts, in favor of his manumitted slaves, and, in a judicial proceeding, to determine the invalidity of a deed of manumission as being in prejudice of creditors, the negro manumitted is entitled to the assistance of the heir at law, or the person holding the real estate, in taking an account of the amount thereof before the insolvency of the deceased manumittor can be legally ascertained.

With regard to the manumittor himself and his legal representatives, the manumission, though in prejudice of creditors, is valid, and the negroes manumitted are not assets for the payment of debts.

Where the administrator of an executor takes out, jointly with another, letters of administration *de bonis non*, on the estate of the testator, he does not exclusively represent both estates ; and, consequently, there can be no transfer, by operation of law, of the property in his hands, as administrator, to him as administrator *de bonis non*.

[Joseph G. Harrison, deceased, by his will, dated 2d November, 1844, devised to his wife, Matilda B. Harrison, eighty acres of land ; and devised, that his executor should sell the rest of his real estate, and pay to his wife one-third of the balance of the proceeds which might remain after the payment of his debts. He also devised to his niece, Isabella Thomas, two thousand dollars, without interest, to be paid out of the proceeds of the sale of his real estate ; and the balance of the money arising from said sale, he gave to his nephew, Thomas L. Simmons. The testator, by his will, also manumitted some of his slaves immediately, and to the others he gave the privilege, after serving out a term of years, of emigrating to Africa.

Such proceedings were had in the above cases consolidated, that a sale of the real estate was made by Wood, the executor,

(who was appointed trustee for that purpose,) and ratified by the court ; and certain questions having arisen relative to the legacies bequeathed by the testator, the nature of which will appear from the Chancellor's opinion, the case was submitted to him upon written arguments. And at this term, he delivered his opinion as follows :]

THE CHANCELLOR :

Wood, the executor, in his answer to the bill filed by Thomas, suggests a doubt, whether the latter is entitled, as surviving husband, to the two thousand dollars, which his deceased wife, Isabella Thomas, was to have received out of the proceeds of the real estate which was to have been sold by the executor, she having died before the sale was made ; and supposed that the same may now belong to her brother and sister, she (the wife) having died without issue. And this is the first question to be considered. The brother and sister in their answers do not set up any claim to this money, but my opinion in regard to it is not placed upon this ground.

The testator has directed that his land should be sold by his executor, and out of the proceeds thereof, Isabella, the wife of Thomas, should be paid the sum of two thousand dollars. This provision in the will converted the land, in the view of a court of equity, into money, and the surviving husband has the same title to demand the legacy bequeathed his wife as if it had been payable out of the personal estate of the testator.

The Court of Appeals in the case of *Hurtt* vs. *Fisher*, 1 *Har. & Gill*, 88, recognise in the most explicit terms the rule, that lands devised to be sold are turned into money, and considered in equity as personal estate. In that case to be sure, in which the surviving husband (as here) was seeking to recover a legacy which his wife was entitled to, out of the proceeds of the real estate directed to be sold—the wife survived until after the sale was made ; which the court said removed all doubt of his right to recover; but it appears to me very obvious from the manner in which the rule of law is asserted, that the result would have been the same if the wife had died prior to the sale. In the

eye of a court of equity, the will of the testator had converted the real into personal estate, and the actual conversion by a sale could not be necessary to give validity to rights founded upon the equitable principle. That principal alone carries with it all the consequences upon the rights of the parties which would result from an actual sale ; and, therefore, the circumstance that the sale had actually taken place in the lifetime of the wife, in the case of Hurtt and Fisher, could not be necessary to establish the title of the surviving husband.

In the case of *Leadenham* vs. *Nicholson*, 1 *H. & G.*, 267, the learned judge who delivered the opinion of the court, re-asserted the principle that land directed to be sold and converted into money, will, before a sale, be considered as money, and pass as such.

My opinion, therefore, is, without multiplying authorities upon a point which seems very clearly settled, that Samuel W. Thomas, the surviving husband of Isabella, is entitled to receive the legacy of two thousand dollars bequeathed his wife.

The second question has reference to the right of the testator's wife, Matilda B. Harrison.

It appears, that seventy of the eighty acres devised her by her husband, being part of his dwelling plantation, were not his property, but the property of the Honorable Kinsey Johns, and that, by consent of all parties, those seventy acres have been, or are to be, given up to him. Mrs. Harrison, in her answer says, that she made no objection to such surrender, under the belief that she was to be fully compensated therefor, and the question is, whether she is entitled to such compensation out of the residue of the estate.

She did not renounce the will, and as has been stated, is entitled to one-third of the proceeds of the sales of the real estate after payment of debts, and to ten acres, the residue of the eighty acres devised her by the will.

I am of opinion, that Mrs. Harrison, (the widow,) is not entitled to compensation out of the residue of the estate, for the loss of this portion of the real estate devised to her by her husband, unless it shall turn out that the share which she will re-

ceive of the real estate is not equal to that portion thereof which she would be entitled to as dower.

If there had been a total failure in the real devise to her, the case might be governed by different considerations, as the act of assembly requires a disposition of a part of both the real and personal estate to divest the wife of a right to both; and such seems to have been the view taken by the court in *Griffith* vs. *Griffith's Ex'rs*, 4 *Har. & McHen.*, 101, and *Coomes* vs. *Clements*, 4 *Har. & Johns.*, 480. But, as in this case, the devise of real estate to the wife was not entirely invalid or inoperative, I do not think she can, because of a failure of a part of such devise, claim indemnity out of the residue of the estate, to the prejudice of the other parties, unless as stated above, the share which she will now receive should be less in value than her dower.

The counsel of Mrs. Harrison, after quoting the language of the 5th section of the 13th sub-chapter of the act of 1798, supposed that a widow, who stands by the devise made to her by her husband, is to be regarded as any other purchaser, and entitled, if the title to the land devised fails, to be compensated therefor out of the residue of the estate of the vendor.

It is true, the section referred to does say, "that a widow accepting or abiding by a devise in lieu of her legal right shall be considered as a purchaser with a fair consideration;" but this language is qualified by the preceding words of the same section, which saves the legal rights of widows only in the cases in which "nothing shall pass by such devise."

If, therefore, anything passed by the devise to the widow, and she stands by the will, it might be difficult to make out her right to compensation out of the residue of the estate, because of a partial failure of the devise to her.

In view, however, of the language of the Court of Appeals in Coomes vs. Clements, and having a just regard to the spirit of the act of assembly and the strong equity of the case, I have come to the conclusion, that if the devise to the widow is invalid to such an extent as to make what she receives under the will, less in value than her legal share of her husband's

estate, she should be recompensed out of the residue thereof, so far as to place her in the same situation as if she had renounced the will. When it is said that the widow, standing by the will of her husband, is to be considered as a purchaser with a fair consideration, it cannot be meant that she is so to be regarded, whatever may be the extent of the devise to her. Because, if that were so, the rights of the creditors of the husband would be entirely at his mercy. He might defeat them by devising his whole real estate to his wife. But the sound and just rule must be, that she is to be considered as a purchaser of the devise to the value of her share or legal right; and such is the view of the Chief Justice in Coomes vs. Cleménts, and the decision of the late Chancellor in *Margaret Hall's case*, 1 *Bland*, 203.

---

[The remaining question was, whether the pecuniary legacies were a charge upon the manumitted property, in case the other personal property should prove insufficient to pay both debts and legacies? And, as to this, the Chancellor said:]

---

It is stated, and the statement seems to be supported by the accounts of the executor passed in the Orphans Court, that the personal estate, independently of the slaves, is quite sufficient to pay the debts, and I can, therefore, see no reason why they should not receive the benefit intended to be conferred upon them by the will. The Court of Appeals in the case of *Allein* vs. *Sharp*, 7 *G. & J.*, 96, decided that the act of 1796, ch. 67, charged the whole of the manumittor's property with the payment of his debts in favor of his manumitted slaves, and that in a judicial proceeding to determine the invalidity of a deed of manumission, as being in prejudice of creditors, the negro manumitted is entitled to the assistance of the heir at law, or the person holding the real estate, in taking an account of the amount thereof, before the insolvency of the deceased manumittor can be legally ascertained. But, in this case, the real estate is devised to be sold, and after the payment of debts the residue of the proceeds of sale is directed to be distributed

amongst the parties mentioned in the will in certain propor-
tions; and it is not now proposed to be decided, whether under
such circumstances the party manumitted has a right to look to
the avails of the real estate to give validity to the manumission.
If it shall turn out that the personal estate itself, without the
negroes manumitted, is sufficient to satisfy creditors, there can
be no necessity for deciding the other question.

In this case, the creditors, if any remain unpaid, are not be-
fore the court, and no judgment that can be pronounced here
can effect their rights.   They cannot be precluded from show-
ing hereafter, if such is the fact, that the estate of the testator
was, without the negroes, inadequate for the payment of debts,
and upon establishing such inadequacy, the proper relief would
be accorded to them.   But with regard to the manumittor him-
self and his legal representatives, the manumission, though in
prejudice of creditors, is valid, and the negroes manumitted are
not assets for the payment of debts.

These principles are also decided in Allein vs. Sharp, and
would entitle the negroes, in this case, to their freedom, as
against the executor of the testator.   Before, however, a final
disposition is made of this question, the case·will be sent to
the Auditor, that the necessary accounts may be taken to as-
certain if the debts are paid, or if there are assets to pay them.

---

[Exceptions were taken to the report of the Auditor, and an
agreement was signed by counsel, that the case should go back
to the Auditor, for the purpose of making such corrections of
his accounts as may be required by the admission of parties,
and by certain accounts and proofs, filed in the cause since the
date of the report, and such additional proofs as may be laid
before him.

John Wood, the executor, appears to have passed four ac-
counts in the Orphans Court, and upon his death, Robert Plum-
mer, his administrator, passed a fifth and final account of the
estate of the testator, Harrison.

Upon the death of Wood, Plummer, his administrator, and
Matilda B. Harrison, the widow of the testator, took out letters

de bonis non, upon his estate, and passed an account in the Orphans Court in October, 1849.

Among the exceptions to the Auditor's report are the following: 1st. "Because the Auditor has charged the administrators, d. b. n., of Joseph G. Harrison, in these accounts with various sums of money and property which were more properly chargeable to John Wood, the executor of Joseph G. Harrison; and because he has stated no account showing the liability of the administrators, d. b. n., and estate of said Wood separately, as should be done."

2d. "Because in account B. large sums of money are charged for the hire of negroes, on the supposition that the same were received, whereas it does appear by the administration accounts, and by them alone, the only proof of such receipts, that other, less and fewer sums was received, and these not by the persons charged therewith."

3d. "Because in account B. these exceptants are charged with higher rent, and more in amount than was received by John Wood—but that no part thereof should be charged against them."

4th. "Because the value of the services of the said negroes, as charged in account B., for three years after the testator's death, belong, under his will, to the exceptant, Matilda B. Harrison."

11th. "Because, in said accounts, or some of them, the Auditor should have assigned to Mrs. Matilda B. Harrison, the widow, so much of the personal or real estate as would compensate her, for the loss she has sustained in the seventy acres of land devised to her by her husband, and afterwards given up to Dr. Johns."

Upon these exceptions the Chancellor said :]

———

The accounts settled by Wood, as the executor of Joseph G. Harrison, furnish to a considerable extent, the basis of the accounts of the Auditor, though they have been modified by certain depositions, and other evidence introduced in the cause by the counsel for the administrators de bonis non. No account

appears to have been stated between the administrator of Wood, and the estate of Harrison, and as the same person does not exclusively represent both estates, and there is consequently no transfer, by operation of law, of the property in the hands of Plummer, as administrator of Wood, to Plummer and Harrison as administrators de bonis non of Harrison, it would seem proper that such account should be stated. *Watkins* vs. *State*, 2 *Gill & Johns.*, 220.

In the accounts passed in the Orphans Court, the executor is charged with various sums for the hire of servants, for rents of the real estate, and for produce made on the land ; and as these accounts are, *prima facie*, correct, and as there is no allegation in the cause, that more was received, or ought to have been received, than the sums thus charged, I do not conceive myself authorized, *ex mero motu*, to charge the executor with additional or greater sums upon proof, which appears to have been introduced for a different purpose. These accounts, therefore, I think, should be assumed to be correct, unless directly impeached by allegation and proof.

The fourth exception of the widow, Matilda B. Harrison, I do not think well taken.

Among the provisions made by the testator for his widow, he bequeathed her his negro man Major, to serve her for three years after his decease, at the expiration of which period he was to have the privilege of going to Africa, or remaining here if the law will permit him ; and then the will says, "that all the rest of my negroes shall serve my wife, under the direction of my executor, *for the interest of my estate*, for the term of three years," and after that time, and as the negroes attained the ages designated by the testator, they were to have the privilege of going to Africa.

There was a previous devise of real estate to the widow, and an authority given to the executor to sell the residue of the testator's real estate at his discretion ; and after the payment of debts, one-third of the proceeds of this residue was likewise given to her. Two thousand dollars of these proceeds were then given to Isabella Thomas, and the balance thereof to the

testator's nephew, Thomas L. Simmons; and until the executor shall make the sale of the real estate, the will declared, that "all, both real and personal, shall remain under his direction, the proceeds applicable to the payment of my debts, the support of my wife and family, and to the college charges of my nephew, Thomas L. Simmons," &c.

It is quite clear, I think, that the testator did not intend to give his wife the same interest in the services of the residue of his negroes, as he had given her in the negro named Major, but that he designed that these negroes, other than Major, should, for the space of three years, be employed for the benefit of his estate, for the payment of debts, for the support of the wife and family, and the education of his nephew.

It appears from the accounts, that the proportion of the proceeds of the real estate distributed to the widow, Mrs. Harrison, together with a portion of the devise to her not included in the seventy acres surrendered to Dr. Johns, is fully equivalent to, and in fact considerably exceeds, her dower interest in the entire real estate of her husband, and this being so, I am of opinion, that the eleventh exception cannot be maintained, and is in conflict with the former opinion and order of this court.

The solicitors of the parties have signed an agreement, which, among other things, provides, that the account C. distributing the proceeds of the real estate sold by the trustee, Robert Plummer, may be confirmed, reserving, however, to Mrs. Harrison the right of appeal from the order of confirmation. The order, therefore, will be according to this agreement, and *pro forma.*

It appears by a paper filed on the 5th instant, that Thomas L. Simmons, the residuary devisee and legatee, has received, and now has in his possession, certain negroes and sums of money; and it is agreed that the accounts may be corrected by charging the said devisee and legatee, accordingly, with corresponding credits to the executor, John Wood. This admission will be noticed by the Auditor in stating the accounts, now about to be ordered, but, in the meantime, there seems to be much difficulty in saying what shall be the final disposition of the property. It is thought, however, that there can be no impro-

26*

priety in leaving it with the residuary legatee until the final accounts are taken.

It is, thereupon, ordered, this 9th day of April, 1850, that this case be, and the same is hereby, again referred to the Auditor, with directions to state such account or accounts as will conform with the foregoing directions, from the pleadings, proofs and admissions, and such proofs as may be laid before him, and the parties are hereby authorized to take the depositions of witnesses before any justice of the peace, or before the Auditor, on three days' notice to the opposite party, or his or her solicitor, such depositions to be taken and returned on or before the 10th day of June next.

[No appeal was taken in this case.]