# HEIGHT *v.* STATE

[No. 241, September Term, 1960.]

*Decided May 4, 1961.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT, HORNEY and MARBURY, JJ.

*Elsbeth Levy* for the appellant.

*James O'C. Gentry, Assistant Attorney General,* with whom was *Thomas B. Finan, Attorney General,* on the brief, for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

Just a few days prior to June 1, 1954, the petitioner was sentenced to six months' confinement in the Maryland House of Correction by a Trial Magistrate of Calvert County; and, as a result thereof, he was incarcerated in said institution as of June 1, 1954. After serving some five months, he was duly released, but, failing to display any peculiar or outstanding qualifications for high rank in the "Blue Ribbon Army," he was arrested for, and convicted of, being drunk and disorderly on five occasions during a twelve-month period. His last conviction was in the Circuit Court after the State had requested a jury trial, and he received a six months' sentence as an habitual offender. At the same time, he was referred to the Patuxent Institution for examination. The staff of that Institution recommended that he be committed thereto. After hearing pursuant to the Code (1957), Article 31B (sometimes hereinafter referred to as the Act), he was found to be a defective delinquent, his aforementioned sentence was suspended, and he was returned to the Institution under indeterminate sentence, where he has since abided. The Circuit Court denied the appellant's petition for relief under the Post Conviction Procedure Act, and we granted leave to appeal.

The briefs on both sides have been prepared with care, ability and thoroughness, which is most commendable, as well as helpful and gratifying to the Court.

Three sections of the Code (1957), Article 31B, are here involved. In pertinent part they are as follows:

"Section 6. Requests for examination.

(a) *For whom requests may be made.*—A request may be made that a person be examined for possible defective delinquency if he has been convicted and sentenced in a court of this State for a crime or offense coming under one or more of the following categories: * * * (5) two or more convictions for any offenses or crimes punishable by imprisonment, in a criminal court of this State.

* * *

### APPLICATION

* * *

"Section 15. Not to affect magistrate courts.

Nothing in this article shall be construed to extend to or affect any case in the court of a magistrate or justice of the peace, or any person involved in such case, unless by reason of a request for a jury trial or for other cause the case shall be heard and adjudicated in a regular criminal court.

"Section 16. Article construed prospectively.[1]

Nothing in this article shall be construed to extend to or to affect any person who on June 1, 1954, is held as an inmate or prisoner of any penal institution operated and supervised by the Department of Correction in this State, unless after that time he is convicted and sentenced in a court of this State for a crime or offense listed in Section 6 above; and it is specifically provided that one such offense or crime committed after June 1, 1954, if followed by conviction and sentence, shall be sufficient to bring the said person within the application of this article.

---

1. Article 31B was enacted in 1951, with most of its provisions to become effective as of June 1, 1952. Section 16 has been amended twice. The date of June 1, 1952, appeared in the original enactment wherever June 1, 1954, now appears. In 1953, the June 1, 1954, provisions were inserted, and they were left unchanged when the section was again amended in 1955.

\* \* \* Nothing in this article shall be construed to bring any person within the application of this article by reason of any crime or offense committed prior to June 1, 1954, unless it is under the foregoing provisions of this section."

The appellant contends that his confinement on June 1, 1954, was the result of a "case in the court of a magistrate," that he was "a person involved in such case," in his said case there was "no request for a jury," and it was not "heard and adjudicated in a regular criminal court." Consequently, he argues, that since the State makes no claim that he has had two convictions under the terms of Section 6 (a) (5), he is clearly exempted from the provisions of Article 31B by Section 15. The State, on the other hand, says that Section 15 is only intended to be an exception to the Act, and the object of the exemption granted by said section is "meant to apply to the current disposition of a case by a magistrate," *i. e.*, that no trial magistrate or justice of the peace should have a right to refer a person to the Patuxent Institution for examination. The State further contends that the appellant's present confinement is legal, because he was a "person who on June 1, 1954 [was] held as an inmate or prisoner of [a] penal institution operated \* \* \* by the Department of Correction" and, thereafter, he was convicted of, and sentenced for, one offense within the category named in Section 6 (a) (5), which brought him directly and specifically within the provisions of Section 16.

The question is not entirely free of difficulty. It is obvious that if Section 16 controls under the circumstances of this case, as we have stated them above, a literal reading of said section supports the State's contentions. It is, also, apparent that if Section 15 prevails and it be given a grammatical construction, the appellant's claim of exemption from the provisions of the Act is well founded, because his conviction prior to June 1, 1954, was the result of a "case in the court of a magistrate," and he was a "person involved in such

case." From the above, it is readily seen that the provisions of both Sections 15 and 16 cannot be applied to the facts and circumstances of this case, if both are afforded strictly verbal constructions.

It has been stated so frequently by this Court, and others, that the "primary," the "fundamental," and the "cardinal" rule in the construction of statutes is to effectuate the real and actual intention of the legislature, that it no longer requires the citation of authorities to support the proposition.[2] In determining the legislative intention of an enactment, the Court considers its language in its natural and ordinary signification, and, if there be no obscurity or ambiguity on the face of it, there is no occasion for construction, and the Court will give to the language used, its apparent meaning, *Pressman v. Barnes,* 209 Md. 544, 121 A. 2d 816; however, when the words of a statute are of doubtful meaning, the Court, in determining legislative intent, will consider not only their usual and literal meanings, but their meaning and effect considered in the light of the setting, the objectives and purposes of the enactment, and the consequences that may result from one meaning rather than another, *Tyrie v. Baltimore County,* 215 Md. 135, 137 A. 2d 156, with the real legislative intent prevailing over literal intent. *Wright v. State,* 189 Md. 218, 224, 55 A. 2d 849; *McKeon v. State,* 211 Md. 437, 443, 127 A. 2d 635. And all parts and sections of Article 31B must be read and considered together in arriving at the true intention of the legislature, as they form part of a general system. *State v. Petrushansky, supra.*

Applying the above principles of law to the facts in the instant case, we think that Section 15 is controlling. In enacting the Defective Delinquent Act, the legislature embarked

---

2. For a few of the many Maryland cases so holding, see State v. Petrushansky, 183 Md. 67, 71, 36 A. 2d 533; Wright v. State, 189 Md. 218, 224, 55 A. 2d 849; McKeon v. State, 211 Md. 437, 443, 127 A. 2d 635; Tyrie v. Baltimore County, 215 Md. 135, 140, 137 A. 2d 156.

upon the adoption of relatively new, experimental and somewhat unusual legislation, with few, if any, close parallels, either procedurally or substantively, to the laws of other jurisdictions. *Legislative Council Research Report No. 29.* The underlying purpose of the Act was to protect society from the dangers of persons whose actions evidence a propensity toward criminal activity, with the statutory emphasis being on confinement and treatment, rather than on punishment or deterrence. *Eggleston v. State,* 209 Md. 504, 121 A. 2d 698. Section 9 (b) provides that when a defendant is found to be a defective delinquent, he shall be "committed or returned to the institution for confinement * * * for an indeterminate period without either maximum or minimum limits." Realizing the far-reaching effects that legislation of this nature would have upon some citizens of this State, the legislature adopted Section 15, which, as has been pointed out above, says that "nothing in this article shall be construed to extend to or affect any case in the court of a magistrate or justice of the peace, or any person involved in such case," unless the case is finally tried in "a regular criminal court." This is broad, plain and inclusive language; and was used by the legislature, we think, to insure that no person's rights would be affected by the provisions of the Act, unless that person was convicted and sentenced—not by a trial magistrate or justice of the peace—but in "a regular criminal court" of this State, where the presiding judge, by training, experience and education would be versed in the law—a wise and salutary safeguard.

We pointed out above that Section 6 (a) (5), the only sub-section of Section 6 that is relevant to this case, requires two or more convictions of offenses punishable by imprisonment, in a criminal court of this State (because of Section 15, magistrates and justices of the peace do not conduct "criminal courts" within the purview of the Act) before a person may be committed as a defective delinquent. If the State's contentions are to prevail, it would mean a holding that Section 16 creates an exception to Section 15, for, concededly, any number of convictions before a trial magistrate or justice

of the peace, whether before or after June 1, 1954, would not render a person eligible for commitment under Section 6, nor would such convictions, combined with one conviction in the circuit court, render him eligible under Section 6 (a) (5). Such a holding would create unusual, anomalous and incongruous results. It would mean that had the appellant been incarcerated as the result of a magistrate's conviction just after, instead of shortly before, June 1, 1954, he admittedly would have been exempt from the provisions of the Act; but, for some inexplicable reason, the legislature selected persons confined as of June 1, 1954, as the result of magistrate's convictions to be exceptions to the expressed purposes of Section 15. It would mean that had the appellant been convicted a dozen or more times by a magistrate after June 1, 1954, and before his one conviction in the Circuit Court, he, unquestionably, would not be subject to commitment under the Act; but, if he happened to be confined on June 1, 1954, as the result of conviction by a magistrate for a single offense, perhaps of a trivial nature, Section 16 would prevail. We can find no logical nor meaningful basis for singling out those serving under magistrate's commitments on June 1, 1954, for treatment different from that afforded those coming before and after, and we do not think the legislature intended to do so. In construing statutes, results that are unreasonable or inconsistent with common sense should be avoided, whenever possible. *Maguire v. State,* 192 Md. 615, 65 A. 2d 299. Although it would have been preferable for the legislature, in enacting Section 16, to have spelt out, explicitly, that its provisions did not affect any prisoner confined as a result of a conviction by a trial magistrate or justice of the peace, a reading of the Act (particularly the sections quoted above) makes it clear to us that the legislature did not intend the provisions of Section 16 to lessen the prerequisites of eligibility for examination under the Act of those who were imprisoned on June 1, 1954, under commitments from magistrates or justices of the peace. This construction harmonizes all of the quoted sections of the Act, and is con-

sistent with the Act's general objectives and scope. *Pittman v. Housing Authority*, 180 Md. 457, 25 A. 2d 466.

Since the appellant was found to be a defective delinquent after only one conviction in the Circuit Court and Section 6 (a) (5) requires two or more, we hold that his further detention would be illegal, and, therefore, he is entitled to be released.

> *Order denying petitioner's application reversed, and case remanded for the entry of an order instructing the Director of the Patuxent Institution to release petitioner from further custody, and the Clerk is directed to issue the mandate forthwith.*