DOMAIN, EX'R OF THE ESTATE OF SARAH C.
NAYLOR *v*. BOSLEY, INDIV. AND ADM'X
D.B.N., C.T.A. OF THE ESTATE OF
JAMES HARRISON NAYLOR

[No. 130, September Term, 1965.]

*Decided March 14, 1966.*

*Dissenting opinion filed March 29, 1966.*

2

The cause was argued before PRESCOTT, C. J., and HAMMOND, MARBURY, OPPENHEIMER, and McWILLIAMS, JJ.

*Herbert E. Witz,* with whom was *John N. Biesecker* on the brief, for appellant.

*L. Robert Evans,* with whom was *William M. Manko* on the brief, for appellee.

PRESCOTT, C. J., delivered the majority opinion of the Court. HAMMOND, J., dissents. Dissenting opinion at page 11, *infra.*

The executor of a wife, who survived her husband for only a short time, appeals from an order of the Orphans' Court for Carroll County, which denied the executor's claim to an interest in both the real and personal property left by the deceased husband.

The husband and wife both died testate; he on February 17, 1964; she on May 20 of the same year. He was survived by his widow and five siblings, but no children, descendants, father or mother. He left one parcel of real estate, a lot improved by a dwelling, and personalty of a value of some $14,000. He left his wife a life estate in the real property, with remainders to the siblings. The testator made no provision that the devise was in lieu of his wife's legal share in his realty or personalty, or both. The wife was left no interest in, or portion of, the personalty. The rest and residue of his estate was also left to his siblings. The wife, during the time she was a widow, did not renounce the will, but, after her demise, her executor (al-

though advised by counsel that the same would be ineffective) attempted to renounce the same on behalf of his testatrix's estate. After a hearing, the Orphans' Court passed the order referred to above, and this appeal followed.

The court below correctly held that the attempt to renounce the husband's will by the wife's executor was ineffective (*Boone v. Boone,* 3 Harr. & McH. 95; *Collins v. Carman,* 5 Md. 503; 83 A.L.R. 2d 1079; 1 Sykes, *Probate Law & Practice,* § 175. Compare *Kernan v. Carter,* 132 Md. 577), a fact which seems to be conceded by the appellant, but held that the devise of realty to the wife, plus her failure to renounce, prevented her executor from participating in the husband's personalty or realty.

To determine whether this ruling was correct, and if not, to what extent the wife's estate is entitled to participation, we must examine the pertinent statutory provisions. At the time of the husband's death, these provisions read as follows:

"Every devise of land or any estate therein, or bequest of personal estate to the wife of the testator shall be construed to be intended in bar of her dower in lands or share of the personal estate, respectively, unless it be otherwise expressed in the will." Code (1957), Article 93, § 328.

\* \* \*

After providing for a bar of dower or share in land, or share in personalty for failure to renounce, and the time and mode of renunciation, Section 329 (Acts of 1959, Ch. 20), stated:

"If the election be of dower in lands and the legal share of the personal estate, the said surviving husband or widow shall take dower in lands and one-third of the surplus personal estate (if the deceased spouse shall be survived by descendants), and dower in lands and one-half of the surplus personal estate (if the deceased spouse shall not be survived by descendants), and no more. If the election be of the legal share of both real and personal estate, the surviving husband or wife shall take one-third of the lands as an

heir and one-third of the surplus personal estate (if the deceased spouse shall be survived by descendants) ; and one-half the lands as an heir, and one-half the surplus personal estate (if the deceased spouse shall not be survived by descendants, but shall be survived by a father or mother) ; and four thousand dollars or its equivalent in property, or any interest therein, at its appraised value, and one-half of the residue of the lands as an heir and one-half of the surplus personal estate remaining (if the deceased spouse shall not be survived by descendants or a father or mother), and no more."

\* \* \*

"If the will of the husband devise a part of both real and personal estate she shall renounce the whole, or be otherwise barred of her right to both real and personal estate." Section 331.

\* \* \*

"If the will devise only a part of the real estate, or only a part of the personal estate, the devise shall bar her of only the real or personal estate, as the case may require; provided, nevertheless, that if the devise of either real or personal estate, or both, shall be expressly in lieu of her legal share of one or both, she shall accordingly be barred unless she renounce as aforesaid." Section 332.

\* \* \*

"But if in effect nothing shall pass by such devise, she shall not be thereby barred whether she shall or shall not renounce as aforesaid. In such case the widow shall take one-third of the lands as an heir and one-third of surplus personal estate (if the deceased husband shall be survived by descendants) ; and one-half the lands as an heir and one-half the surplus personal estate (if the deceased husband shall not be survived by descendants, but shall be survived by father or mother) ; and four thousand dollars or its equivalent in property, or any interest therein at its appraised

value, and one-half of the residue of the lands as an heir and one-half of the surplus personal estate remaining (if the deceased husband shall not be survived by descendants or a father or a mother, but shall be survived by a brother or sister or a child or descendant of a brother or sister) and no more." Section 333.

Since some of the above provisions, or their predecessors, have already been construed by this Court, our present discussion of them, in order to determine some of the issues here involved, need not be elaborate.

First, we shall consider whether the life estate devised unto the widow was such an "estate" as to require renunciation by her under Sections 328-333 of Article 93, or Article 46, Section 3, in order to entitle her executor (or her heirs) to share in her husband's realty. (No question is raised relative to parties, procedure, or jurisdiction.) We think it clearly was, and little need be added to show that it was. Section 328 provided that *"every* devise of land or *any estate therein"* etc. (Emphasis added.) This is broad and encompassing language. Under the will, the wife received a life estate in all of the husband's realty. A life estate in realty is a freehold interest or "estate" therein, Venable, *Law of Property in Land,* p. 8, and we hold that the devise of such an estate to the wife barred her (or her estate) from participating further in the husband's realty in the absence of a renunciation. Article 93, Sections 328, 329, 332; Article 46, Section 3; *Yungerman v. Yungerman,* 165 Md. 609; *Collins v. Carman,* 5 Md. 503. Cf. *Senk v. Mork,* 212 Md. 413. And we do not think the fact that the wife died shortly after her husband and consequently did not enjoy her life estate for a substantial period of time brought our situation here, as argued by the appellant, within the scope of the holdings in *Malkus v. Richardson,* 124 Md. 224, or *Kreamer v. Hitchcock,* 207 Md. 454, wherein purely "nominal" bequests were involved.

We now consider whether the devise and the wife's failure to renounce barred her estate from sharing in the husband's personalty. Section 332 and this Court's previous decisions, we think, answer the question. In *Griffith v. Griffith's Exc'rs,* 4

Harr. & McH. 101, a testator devised a part of his real estate
to his widow (as in the case at bar), but bequeathed all of his
personalty to others (also as in the present case). The widow
did not renounce the will, but it was held that she was entitled
to share in her husband's surplus personal property. Although
this case was decided on the law as it existed before Ch. 101,
subch. 13 of the Acts of 1798, its holdings were reviewed and
approved in *Marriott v. Marriott,* 175 Md. 567. See also 1
Sykes, *Probate Law & Practice,* § 174. Compare *Coomes v.
Clements,* 4 H. & J. 480 (1819) ; *Kreamer v. Hitchcock, supra;
Suman v. Martin,* 179 Md. 695, 20 A. 2d 503. In view of the
above, it seems superfluous to pursue the question further, and
we shall not do so. We hold that the wife's estate is entitled
to a portion of the husband's personal property.

The only remaining question is to determine what that por-
tion is. Recapitulating, we have a man dying testate, leaving
both real and personal property. The testator left no descen-
dants and no mother or father, but his wife and siblings sur-
vived him. He devised unto his wife an estate in his realty,
but left her none of the personalty. She did not renounce the
devise of realty. We held above that under these circumstances,
she (or her estate) is entitled to a share in the personalty, and
our immediate problem, as previously stated, is to decide what
that share is.

The briefs contain no case where, under statutory provisions
such as ours, this exact question has been determined, and our
research has produced none. A close and careful examination
of the controlling statutes, as we have quoted them, reveals no
language wherein our proposition may be fitted so neatly and
compactly as the diminutive, exquisite foot of Cinderella into
her celebrated slipper, so as to demonstrate an explicit direc-
tion from the Legislature as to the precise mode of calculating
the share under the circumstances. This, unquestionably, is
due, at least in part, to the fact that we are dealing with pro-
visions in statutes dating back to 1798 (Ch. 101, subch. 13,
*supra*), some of which remained almost, if not, unchanged un-
til the death of our testator, while others were amended, with-
out, at times, making express provisions relative to the myriad
of conceptual ramifications that could arise.

However, we have said many times, and it seems to be a rule of universal recognition, the cardinal rule of statutory construction is that the courts should ascertain the legislative intent and place that intent into effect. *Height v. State,* 225 Md. 251. And, as pointed out in the opinion therein, when the language of a statute is of doubtful meaning, the Court, in determining legislative intent, will consider such language not only in its natural and literal meaning but its meaning and effect considered in the light of the setting, the objectives and purposes of the enactment, and the consequences that may result from one meaning rather than another. Additionally, all statutes forming a part of a general system should be considered together. Id. 257. We think an analysis of the history of the statutes here involved, of the statutes themselves, and of related statutes (Code [1957], Article 46, §§ 1-4, relating to descents and rights of surviving spouses; Article 93, § 137, relating to distribution to spouses) discloses the legislative intent in the situation before us.

In the early years of our State (as in the colony before it) there was a definitely recognized distinction between a man's real and personal property, and the modes of their transfer, either *inter vivos* or upon death. Compare *Griffith v. Griffith's Exc'rs; Coomes v. Clements;* both *supra,* and *Hokamp v. Hagaman,* 36 Md. 511. Just before the turn of the Nineteenth Century, a serious controversy arose as to what portion of his personalty a husband could bequeath away from his wife, if she protested. This dispute was decided by the General Court in *Griffith, supra,* in 1798 (affirmed by the Court of Appeals in 1801), wherein it was held that under the common law, a wife was entitled, when there were children, to a ⅓ part of her husband's personalty, after payment of debts and funeral expenses, and the husband could not deprive her of the same by his will. (See also *Coomes v. Clements, supra,* [1819] where there is a rather thorough history of our subject as it applies to Maryland, including the Maryland statutes, beginning in 1699.)

It seems obvious that Ch. 101, subch. 13, of the Acts of 1798, in part, resulted from the holding in *Griffith.* Section one thereof prescribed in almost the identical language of Article 93, § 328 (as of February, 1964), *supra,* that every bequest of per-

sonalty to the wife of a testator should be construed to be intended in lieu of her share of the personal estate, unless otherwise expressed in the will. Section 2 (the stem of Article 93, § 329) provided, inter alia, that a widow would be barred of her share in the personal estate by such a bequest unless she renounced the same, but if she did renounce the same "she shall be entitled to one third part of the personal estate * * *, which shall remain after payments of his just debts, and claims against him, and no more." This, of course, was in complete conformity with the holding in *Griffith*.

In 1916, the Legislature passed Article 46, §§ 3 and 4, wherein the estate of dower was not abolished, but the "share or proportion" of a surviving spouse in realty of the other spouse was designated upon renunciation.

Said Section 2 (Article 93, § 329 as of February, 1964) remained as originally drawn for a long period when, after amendments of no substantial significance here, in 1924, it was amended so as to provide a different (and additional) portion of the husband's personalty for the wife in cases where the testator left no descendants, making this Section partially conform with Ch. 101, subch. 11, of the Acts of 1798 (now Article 93, § 137) relating to distribution in cases of intestacy.

In 1933, the Legislature amended said Article 93, § 137, so as to provide in cases of intestacy, where there were no descendants of the intestate and no parent, but the intestate left a sibling or descendants of a sibling "the surviving [spouse] shall take Two Thousand Dollars ($2000) or its equivalent in property, or any interest therein, at its appraised value, and one-half of the residue." This seems to have been the advent of the quoted language into Maryland law, but, at that time, no such provision was added to Article 93, § 329, which related to cases of testacy.

This, in general outline, was the state of the law when the important and well-known case of *Marriott v. Marriott*, 175 Md. 567, was decided on January 10, 1939. Mr. Marriott, the testator, left a moderate estate consisting of real estate of the approximate value of $12,000, and surplus personalty of some $20,000. He was survived by his widow and several nieces and nephews, but left no child, descendant, parent, or sibling, sur-

viving. He made no devise or bequest to his wife. She did not formally renounce the will, but claimed a ½ interest in the realty and surplus personalty, plus a $2,000 allowance, basing this latter claim on the provisions of what is now Article 93, § 137, *supra.* (The claim to the real estate is not dealt with further in the opinion.) Her claim was contested. The Court held that under the authority of *Griffith* and *Coomes,* both *supra,* and other cases cited, it was not necessary for the widow to have renounced the will in order to assert her common law or statutory rights, and those rights sustained her claim to the ½ of the personalty, there being no children or descendants.

In response to (and in denying) the claim for the $2,000 allowance, the Court held that (what is now) Article 93, § 137, applied to cases of intestacy only, and not to those of testacy, and, in pointing out that no similar provision had been included in what is now Article 93, § 329, used this cogent language:

> "It is clear that chapter 386 of the Acts of 1933 (now Article 93, § 137) affected estates of intestates only; and upon the authority of the cases hereinbefore cited; and in the face of the express language of the Act, it cannot be held to relate to cases in which the decedent has executed a will.
>
> "This observation would seem logical when applied as between the estates of intestates and those disposed of by will. In the former case the decedent has indicated no discrimination against his wife; and the Legislature, by the Act of 1933, has directed that she be more liberally dealt with than has been the law in this state over a long period of years. If it had intended to apply the same liberality to the estates of testates in those cases where the widow was ignored, it could, and doubtless would, have said so. This it did not do, however; * * *."

At the time of this decision, the Legislature of Maryland was in session. Within less than 4 months, it enacted and the Governor approved Ch. 499 of the Acts of 1939, making Article 93, § 329 conform more closely to Article 93, § 137.

Again, in 1957 (Chapter 717), the Legislature amended said

Section 137, so as to increase the allowance, under stated circumstances, to $4,000, but did not amend Section 329 to make a similar provision in cases of testacy. In 1959 (Chapter 20), when such an amendment was made, the Legislature stated in the preamble to the Bill that "officials of the State who are responsible for the administration of the testamentary laws are construing the Act of 1957 to have changed this figure from $2,000.00 to $4,000.00 as an amendment by implication" to Sections 329 and 333, and it is desirable that "the reference to $4,000.00 may be uniform throughout all sections of the testamentary laws in which there are references to it."

Thus, it is seen that the Legislature over a period of a great number of years has distinguished between a testator's real and personal property, and how, and to what extent, and under what circumstances he may devise and bequeath the same away from his wife. Obviously, the relationship between the realty and personalty has been correlated in certain aspects. And just as obviously there has been a trend towards a greater allowance to the wife, when the only surviving relatives of the testator are no closer than brothers and sisters. As of February, 1964, both under Section 329 and Section 333, the wife in the case at bar would have been entitled, had she not accepted the devise of the life estate in realty, to "four thousand dollars or its equivalent in property * * * and one-half of the residue of the lands as an heir and one-half of the surplus personal estate remaining * * *." However, she cannot take one-half of the real estate because Section 332 states that she cannot and we have so held above.

But does the fact that she has accepted the devise and therefore cannot participate further in the realty preclude her from sharing at all in the allowance of $4,000? We think not. This Court held in *Suman v. Martin, supra,* that under Article 93, § 314 (now §329) "the surviving spouse is entitled to the first $2,000 [now $4,000] out of the net estate whether there is testacy or intestacy * * *." (No reference was made to what is now § 337.) Further, to make a ruling that her estate cannot participate in the personalty would run contrary to Section 332, wherein it is said "if the will devise only a part of the real estate, or only a part of the personal estate, the devise shall

bar her of *only* the real or personal estate * * *." (Emphasis added.)

On the other hand, should the wife be entitled to the full $4,000 allowance out of the personalty, after receiving the devise of realty? Again, we think not. It is clear to us that, under both Section 329 and Section 333, although the $4,000 allowance was to amplify the widow's share, it was to be an adjunct to and supplement the wife's interest in *both* the real estate and personalty of the husband. Therefore, as she has received a devise of realty, she should not, we think, receive any portion of the allowance that the Legislature intended to be a supplement to her interest in her husband's realty. As the Legislature directed that this $4,000 allowance be derived from the "first $4,000 out of the net estate," whether realty or personalty, and thereafter the widow receive one-half of the residue of lands and one-half of the surplus personalty, it seems naturally to follow that the legislative intent was that one-half of the $4,000 allowance supplement the wife's interest in the testator's realty and one-half thereof supplement her interest in her personalty; hence, we hold that the wife's executor is entitled to $2,000, plus one-half of the surplus personalty.

> *Order affirmed in part and reversed in part; and case remanded for the passage of an order in conformity with this opinion; costs to be paid from the surplus personalty.*

HAMMOND, J., filed the following dissenting opinion.

Our case is that of a widow whose husband died, survived by siblings but no children, leaving a will which bequeathed all his personal property to his siblings. There is complete agreement that without the necessity of renunciation the widow is entitled to her legal share of the personalty. The majority, without any support in the case law, finds that this legal share is not $4,000—the figure specified in the currently applicable statutes—and one-half the net personalty, but $2,000—a figure not now mentioned at all in those statutes—and one-half the

net personalty. I dissent, finding first that it is almost demon-strably clear that the preferred allowance of $4,000 is part of the widow's total legal share and finding, second, that the de-termination of the $2,000 figure of the majority is unsupport-able on any theory save the impermissible one (which perhaps has seeped from the District of Columbia into Maryland) of judicial legislation.

I state my reasons briefly because to do so at length would be but to write an essay which would serve no purpose and have no meaning. The Legislature by Ch. 108 of the Laws of 1964, effective June 1, 1964, several months after the crucial events of the present case occurred, amended the law to provide that a surviving spouse was barred, whether or not any part of the realty or personalty passed to him or her under the will, unless a specified renunciation is duly filed and then sets out just what is taken if such a renunciation is filed (in our situa-tion it would be $4,000 and half the personalty and half the realty). The problem now before us will not come up again for decision.

At common law a widow in the situation of the widow here was entitled in intestacy to one-third of her husband's per-sonalty, if there were children, and half if there were not, and he could not deprive her of it by his will. *Griffith v. Griffith,* 4 Har. & McH. 101. As had been done, in part at least, by earlier laws, by Ch. 101 of the Laws of 1798 the Legislature wrote the widow's right in intestacy into the statutory law. In *Coomes et al. v. Clements,* 4 H. & J. 480, 483, Chief Judge Chase said (his colleagues agreeing in their own words), after referring to the full statutory recognition given by the Law of 1798 to the rule of the common law:

> "The following deductions are plainly inferrible from those Acts [particularly the Act of 1798]. If the de-ceased dies intestate, leaving a wife, and without a child, the widow shall have one-half of the personal estate. If the deceased makes a will, and makes no be-quest of any part of his personal estate to his wife * * * and dies, leaving a wife and no child, she shall have one-half of the personal estate; *because, as re-*

*spects his wife, he died intestate* * * *." (Emphasis added.)

The Act of 1798 not only provided, as has been the statutory law since up to June 1, 1964, that if nothing passed by the will to the widow she need not renounce and was entitled to her legal share—which the court held was as in intestacy—but also provided for renunciation by the widow of provisions in the will unsatisfactory to her, and expressly limited the share of personalty she took upon renunciation of a bequest of personalty to one-third of the net "and no more." Judge Johnson pointed out the difference in *Coomes* as follows:

> "The Act of 1798, ch. 101, passed before the will in question was made, restricts the widow's interest, whether children or not, to one-third in the cases to which the restriction applies. The case before the Court does not come within the restricted exception mentioned in the Act; and as the testator died without leaving children, or their representatives, I am of opinion the decision of the Orphans' Court, giving her one-half, was correct."

In *Pacholder v. Rosenheim,* 129 Md. 455, 458-59, where the will made no provision for the widow, the Court said: "Mrs. Pacholder is now claiming, not by virtue of the will, but in opposition to its provisions, and she is entitled, therefore, to the same interest and no other *than if Mr.* * * * *Pacholder had died intestate."* (Emphasis added.)

In 1916 the Legislature made the legal share of a surviving widow in intestacy the same in realty as in personalty. Code (1957), Art. 46 §§ 1-4. In *Pearre v. Grossnickle,* 139 Md. 1, 9 (1921), where the husband left his wife personalty but no realty, the Court said:

> "Mr. Grossnickle devised no part of his real estate
>
> to his wife, and consequently *her legal rights therein* were not affected by his will. *Thomas v. Wood,* 1 Md. Ch. 296; *Durham v. Rhodes,* 23 Md. 233. And as she did not elect to take her dower under Section 4 of Article 46 of the 4th Vol. of the Code of Public Gen-

eral Laws, she is entitled under the provisions of *Section 3 of Article 46 of the said Code* [the intestate provision for realty] to one-third of her deceased husband's real estate [there being surviving children]." (Emphasis added.)

On the other hand, in cases such as *Harris v. Harris,* 139 Md. 187, decided on June 28, 1921, the same day as *Pearre v. Grossnickle,* (139 Md. 1), the Court noted that the then provisions for the rights of widows in the estates of their late husbands were literally copied from the Act of 1798 and held, after quoting the words of Judge Johnson in *Coomes,* that since the widow Harris had renounced, she was restricted to one-third of the net personalty despite the fact there were no children, because the statute said that in such case she should take "no more."

Significantly less than a year after the *Harris* decision, the Legislature by Ch. 348 of the Laws of 1922 amended the renunciation statute—then § 302 of Art. 93—to provide that upon renunciation the surviving spouse was to take such share of the personalty "as he or she would have been entitled to in case of intestacy."

In 1933 the Legislature increased the widow's statutory legal share of personalty in intestacy by adding a prior preferred allowance of two thousand dollars. By Ch. 386 of the Laws of that year, then § 127—now § 137—of Art. 93 was repealed and reenacted to provide that where there was a surviving spouse and siblings but no child or parent, the spouse "shall take Two Thousand Dollars ($2,000.00) or its equivalent in property, or any interest therein, at its appraised value, and one-half of the residue" (the one-half being what she took before the amendment).

This essentially was the state of the law when the Court in 1939 decided *Marriott v. Marriott,* 175 Md. 567, 576, a case in which the will gave the widow nothing. The Court said that in the *Harris* case "it was definitely decided that the statute of distribution in intestacy had no application where a decedent left a will." This was not accurate or correct. *Harris* reiterated that where there was a will which was renounced—not a will which ignored the widow—the statutes in intestacy did not ap-

ply because the renunciation section said in terms that the widow took one-third "and no more." The quoted statement in *Marriott* also overlooked the significant fact that in 1922, after *Harris,* the Legislature in terms made the intestacy statutes apply to cases of renounced wills just as the Court had applied them in wills ignoring the widow in *Coomes, Pacholder* and *Pearre.*

*Marriott* then held that upon the authority "of the cases hereinbefore cited" and the fact that the Act of 1933, which added the $2,000, in terms applied only to intestacy the Act "cannot be held to relate to cases in which the decedent has executed a will." The Court found comfort and support for its holding—the first ever to decide that where the will ignored the widow she did not take what she would have taken in intestacy—in the reasoning that the Legislature recognized that in intestacy "the decedent has indicated no discrimination against his wife" and the Legislature has been liberal with her, and if the Legislature had intended "to apply the same liberality to the estates of testates in those cases where the widow was ignored, it could, and doubtless would, have said so."

The *Marriott* decision on the point rested on a specious legal foundation and, some four months after its decision, the Legislature, recognizing it as unsound or undesirable, ripped away its philosophical basis of presumed legislative intent and, in effect, reversed it.

By Ch. 498 of the Laws of 1939 the Legislature amended then § 314 (§ 333) of Art. 93 so as to add the then $2,000 preferred allowance to the legal share of the surviving spouse where "in effect nothing [of personalty] shall pass" under the will, by Ch. 499 added the two thousand dollars to then § 311 (§ 329) of Art. 93, the renunciation section. Thus the Legislature showed it did intend just what *Marriott* had said it had not intended—"to apply the same liberality to the estates of testates in those cases where the widow was ignored [as to estates of intestates]." There can be little, if any, doubt that if the 1939 amendments to then §§ 311 and 314 had been the law when *Marriott* was decided, the widow would have been given the then two thousand dollar allowance, and little, if any, doubt that the Legislature meant that thereafter in a case where the decedent is survived by a widow and siblings only and no chil-

dren, the widow takes the preferred allowance—raised to $4,000 by Ch. 717 of the Laws of 1957 as to then § 132 (§ 137) of Art. 93 and to $4,000 as to §§ 329 and 333 of Art. 93 by Ch. 20 of the Laws of 1959—and one-half of the net personalty, whether (a) the husband died intestate, or (b) his will leaving personalty to the wife was renounced, or (c) whether the will ignored the wife. The legal share is $4,000 plus one-half the personalty in each case, and this is true regardless of what proportion of the real estate the widow takes or does not take. The $4,000 allowance comes first and does not depend on any factor other than those who survive the decedent and the renunciation if one is required. What the surviving spouse takes under the statutes after and in addition to the $4,000 does not affect or alter the right to the $4,000, as I read the statutes plainly to say.

The legislative history gives firm support to this conclusion. Where the will ignored the widow she has taken as in intestacy from the beginning—except for the brief *Marriott* interlude—and when the Legislature in 1922 recognized the effect of *Harris* under modern conditions, it made the widow's share of personalty upon renunciation the same as in intestacy. In intestacy the widow here would have taken $4,000 and half the net personalty, and she should have the same in this case because the will ignored her as to personalty.