## CASON *v.* BOARD OF COUNTY COMMISSIONERS FOR PRINCE GEORGE'S COUNTY, MARYLAND

[No. 399, September Term, 1970.]

*Decided May 5, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, SINGLEY and SMITH, JJ.

*J. Willard Nalls, Jr.*, for appellant.

*Jess J. Smith, Jr., Associate County Attorney*, with whom was *Walter H. Maloney, Jr., County Attorney*, on the brief, for appellee.

BARNES, J., delivered the opinion of the Court.

In this zoning case, the Board of County Commissioners for Prince George's County, sitting as the District Council (District Council), one of the appellees, on July 31, 1970, granted a special exception to Lorenzo F. Thompson, the owner of the subject property, approximately 38 acres in an R-R (Rural-Residential) zone in Prince George's County for use as a sand and gravel pit (for the extraction of sand and gravel) subject to seven conditions. Upon appeal by James P. Cason, the appellant, the owner of property in the immediate vicinity of the subject property and whose status as a party aggrieved is not challenged, to the Circuit Court for Prince George's County (Powers, J.), the action of the District Council was affirmed on September 29, 1970. A timely appeal was taken to this Court. The principal question presented to us is whether the action of the District Council was not supported by sufficient evidence and was consequently arbitrary, unreasonable, and capricious. We have concluded that the action of the District Council

was supported by sufficient evidence so that the issues before it were fairly debatable. We shall affirm the order of September 29, 1970.

The subject property consists of 37.613 acres and is located on the south side of Walker Mill Road between its intersection with Karen Boulevard and Shady Glen Drive in the Sixth Election District of Prince George's County and, as indicated, is in an R-R zone.

The relevant provisions of the Zoning Ordinance of Prince George's County are as follows:

"28.1  District council authorized to grant special exceptions.

"The district council may grant special exceptions for such periods and for the uses enumerated, and subject to the conditions set forth herein.

\* \* \*

"28.2  General provisions.

"A special exception may be granted when the council finds that:

"(a) The proposed use is in harmony with the purpose and intent of the General Plan for the physical development of the district, as embodied in this ordinance and in any master plan or portion thereof adopted or proposed as part of said General Plan.

"(b) The proposed use will not affect adversely the health and safety of residents or workers in the area and will not be detrimental to the use and/or development of adjacent properties or the general neighborhood.

"28.3  Specific provisions.

"A special exception may be granted in accordance with the specific provisions herein enumerated, in connection with a use for which

such exception is required. The council may, and is hereby empowered to, add to the specific provisions any others that it may deem necessary to protect adjacent properties, the general neighborhood, and the residents and/or workers therein.

\* \* \*

"28.334 *Sand, Gravel, or Clay Pits; Rock or Stone Quarries; Mining Removal of Earth or, Top Soil; or Other Operation Involving Extraction of Natural Material or Deposits.* In all zones the use of vacant land for any or all of the above purposes or uses, subject to the following conditions; that:

"(a) There shall be no use of heavy machinery for washing, refining, or other processing, or manufacturing except in an I-2 (heavy industrial) zone. The use of heavy machinery for extraction and removal of natural material or deposits from the site is permissible;

"(b) The extraction and removal operation of natural material or deposits from the site shall not be noxious, offensive, or otherwise objectionable by reason of dust, smoke, noise, or vibration, in zones where special exceptions may be granted for these purposes and/or uses;

"(c) The land areas exposed by the extraction and removal of natural materials or deposits shall be left suitable for development purposes. A final grading plan shall be submitted, showing the existing exposed ground elevations of the site, of the land immediately adjacent thereto, and of all bounding streets and roads. Exposed land area

shall not have a slope greater than three (3) to one (1), except where the site or portion thereof is developed for port or harbor facilities.

"(d) Special exceptions shall be limited to a period not exceeding five (5) years; except in an R-R zone, which is predominantly undeveloped for a radius of one (1) mile from the proposed operation or in an I-2 zone.

"All applications for special exceptions shall be accompanied by a map of [*sic*] plat, showing the area proposed to be included in the pit or quarry, and an estimate of the time required for the removal of the material."

At the hearing before the District Council on April 24, 1970, counsel for the applicant stated that it was proposed to remove the crest of a hill on a knoll appearing on the plat from its existing height of 274.5 feet above sea level to 255 feet above sea level. The area affected was approximately eight acres of the 37.613 acres of the subject property, the rest of the subject property not being excavated. It was estimated that the excavation would take approximately one year. The amended plat, basically the same as the plat filed with the application, contained sediment control notes required by the United States Soil Conservation Commission and agreed to by the applicant. The applicant was present and available for questions. Alan Ray, Chief Zoning Inspector, was present and testified. His observations and recommendations were submitted to the District Council and indicated, *inter alia,* that there were no residences near the entrance road to the subject property; that across Walker Mill Road there were many apartments; that the nearest single-family residences are on R-R property on Pine Grove Road and Shady Glen Drive; and, that there is another sand and gravel excavation approximately .7 of a mile west of the subject property. He recommended

some nine requirements or conditions if the special exception were to be granted, including effective measures to control the speed of trucks on neighboring roadways for the safety of children and property, effective measures to avoid tracking mud onto paved roads, the avoidance of dangerous slopes or water holes, guidance by the operation of the Code of Ethics prepared by the Southern Maryland Natural Resources Association, the prohibition of excavation within 20 feet of the property lines, a limitation of the special exception for not more than five years, compliance with the recommendations of the Department of Agriculture Soil Conservationist in regard to erosion and approval by the Conservationist of a final grading and seeding plan to be submitted to the Department of Inspections and Permits for review prior to commencing operations.

James E. Redmond, a representative of the Park and Planning Commission, also testified before the District Council, principally in regard to proposed highways in the area and indicating that the proposed excavation would not adversely affect the highway proposals.

Seven individuals appeared in opposition to the granting of the application, stating various general objections. No expert testimony was offered by the protestants.

The District Council, on July 31, 1970, unanimously granted the requested special exception in accordance with the attached findings of fact and conclusions and subject to the attached conditions.

The attached conditions were:

" '1. That the applied for use comply with the U.S. Soil Conservation Service Critical Area Stabilization Requirements and the Prince George's Soil Conservation District temporary seeding standards and specifications as incorporated in the amended plat filed by the applicant;

" '2. That the user must keep the U.S. Soil Conservation Service personnel in constant sur-

veillance of the removal operation and comply with their advice at every stage of removal operations to insure compliance with the highest standards, soil erosion and seeding controls;

" '3. That the user provide a guard on Walker Mill Road during all times when materials are being removed to facilitate the flow of traffic and maximize adherence to traffic laws in proximity to a school crossing;

" '4. That the user shall remove dirt from Walker Mill Road as it is deposited by existing trucks;

" '5. That the removal operation shall not commence prior to seven a.m. and shall cease at five p.m.;

" '6. That a fifty-foot area shall be enclosed by a steel mesh fence to store equipment during off hours;

" '7. That the special exception shall expire one year from date. No operations shall be allowed during December 10, 1970 through March 10, 1971.' "

The attached Findings of Fact and Conclusions were:

" 'This application deals with the property located on the south side of Walker Mill Road, between its intersection with Karen Boulevard and Shady Glen Drive, containing 37.6 acres more or less.

" 'The District Council finds that the proposed use is in harmony with the purpose and intent of the General Plan for the physical development of the district as embodied in the Zoning Ordinance, and that the proposed use will not affect adversely the health and safety of residents or workers in the area and will not be detrimental to the use and development of adjacent properties or the general neighborhood,

as located on the zoning map as submitted by the applicant.

" 'Further development of the land into single-family dwellings would allow the grading down and removal of the land without a special exception. Therefore, the proposed special exception would not create any more traffic problems than future development of the land could create.

" 'The question of air pollution would be regulated under the provisions of the present existing Air Pollution Ordinance.

" 'The District Council feels basically that all the objections that the opposition has presented to the special exception are covered within the conditions.' "

Judge Powers, on appeal to the Circuit Court for Prince George's County, found that there was sufficient evidence before the District Council to make its findings fairly debatable and hence not arbitrary, illegal and capricious. He accordingly affirmed the action of the District Council in granting the special exception subject to the conditions already set forth.

It is not disputed that under the applicable law in Maryland, the applicant has the burden of establishing the requirements of the Zoning Ordinance for the granting of a special exception. As we stated in *Malmar v. Board of County Commissioners for Prince George's County,* 260 Md. 292, 303, 272 A. 2d 6 (1971):

"In *Board of County Commissisoners for Prince George's County v. Luria,* 249 Md. 1, 238 A. 2d 108 (1968), the Court held that in a zoning case involving a special exception in Prince George's County, the applicant has the burden of proof in establishing both requirements of Section 28.2 already set forth, *i.e.,* that (a) the proposed use is in harmony with the

general plan *and* (b) that the proposed use will not have an adverse effect on health and safety nor be detrimental to adjacent properties or to the general neighborhood."

The fact-finding body may properly find that the applicant has met this burden of proof if there is evidence before it which would make the issues "fairly debatable," that is, evidence from which "a reasoning mind could reasonably have reached the result the agency reached upon a fair consideration of the fact picture painted by the entire record," as Judge (now Chief Judge) Hammond aptly stated for the Court in *Board of County Commissioners for Prince George's County v. Oak Hill Farms, Inc.*, 232 Md. 274, 283, 192 A. 2d 761 (1963).

If the issues are fairly debatable as thus defined, the action of the legislative or administrative body will not be considered to be arbitrary, unreasonable or capricious and the Courts will not substitute their judgment for that of such a body even though, if the matter had been originally before the Court, it may well have come to a different conclusion. If, however, "there is no probative evidence at all of harm or disturbance in light of the nature of the zone involved or of factors causing disharmony to the operation of a comprehensive plan, a denial of an application for a special exception is arbitrary, capricious and illegal." *Rockville Fuel and Feed Co. v. Board of Appeals of the City of Gaithersburg,* 257 Md. 183, 191, 262 A. 2d 499 (1970). The Courts will intervene if the action of the legislative or administrative body is confiscatory and results in a taking of property for public use without just compensation, but there is obviously no contention that this issue is involved in the present case.

We have concluded, as did the lower court, that there was sufficient evidence before the District Council to justify its findings that the applicant had met his burden of proof of establishing the criteria required by the Zoning Ordinance.

The appellant does not contest the *form* of the findings of the District Council as sufficient findings required by the Zoning Ordinance. He contends the evidence offered *by counsel for the applicant* is not sufficient to support those findings relying upon our decision in *Baker v. Montgomery County Council,* 241 Md. 178, 215 A. 2d 831 (1966). In *Baker,* we did not reverse the action of the Montgomery County Council in granting a reclassification because the evidence before it was given by the applicant's attorney, but because there was no evidence produced to establish that there had been a change in conditions since the last comprehensive rezoning resulting in a change in the character of the neighborhood to justify the rezoning, there being no contention in *Baker* that there had been a mistake in original zoning. Evidence produced before the legislative body may be through the attorney for the applicant, there being no disqualification of counsel for the applicant, as such, to give evidence. In the present case, in addition to the evidence produced by counsel for the applicant, there was the testimony of Mr. Ray, Chief Zoning Inspector, and of Mr. Redmond, representing the Park and Planning Commission. Their important testimony, already mentioned, was properly considered by the District Council as part of the entire record before it.

Not only are all of the conditions required in the Zoning Ordinance for the sand and gravel pit special exception included in the conditions imposed by the District Council, but additional conditions (many recommended by Mr. Ray) to protect the neighboring property owners and the public generally were added by the District Council as we have already set forth. The problems relating to pollution, traffic and the operation under the special exception for one year (vs. a permitted five year) period during which it may continue were all considered by the District Council and the conditions appear to meet those problems. The Findings of Fact and Conclusions of the District Council are, in our opinion, supported by

sufficient evidence to make the issues fairly debatable and the lower court properly so held.

*Order of September 29, 1970 affirmed, the appellant to pay the costs.*