## WAGNER v. BOARD OF COUNTY COMMISSIONERS FOR PRINCE GEORGE'S COUNTY

[No. 79, September Term, 1971.]

*Decided December 7, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*Russell W. Shipley* for appellant.

*Jess J. Smith, Jr., Associate County Attorney,* with whom was *Walter H. Maloney, Jr., County Attorney,* on the brief, for appellee.

BARNES, J., delivered the opinion of the Court.

This zoning appeal involves the ultimate denial of an application by the appellant, Ely Wagner, for a special

exception for an automobile filling station and auto parking compound (gasoline pumps and islands in conjunction with a car wash) by the Board of County Commissioners for Prince George's County, sitting as a District Council (District Council), appellee, on a tract of land containing 28,351 square feet on the north side of Marlboro Pike (20,801 square feet in the C-2 zone and 7,550 square feet in the R-R zone), approximately 350 feet west of the intersection of Donnell Drive in the Sixth [Spaulding] Election District of Prince George's County (the subject property). The District Council, after approving the application on January 7, 1970, granted, on March 6, 1970, a request for reconsideration dated March 3, filed by Charles J. White, chairman of the North Forestville Citizen's Association, on March 6, 1970. After a rehearing by the District Council on June 3, 1970, the application was disapproved on September 29, 1970. The Circuit Court for Prince George's County (Robert B. Mathias, J.) affirmed this decision of the District Council.

Two questions are presented to us: (1) whether the reconsideration was properly before the District Council under the provisions of Section 28.16A (b) of the Prince George's County Zoning Ordinance (1970 ed.) and (2) was the action of the District Council on the reconsideration arbitrary and capricious as unsupported by competent, material and substantial evidence in view of the record as a whole. Inasmuch as we have concluded that the decision of the District Council was invalid as a result of unlawful procedure under Section 28.16A (b), we will reverse the order of the lower court for this reason and we do not find it necessary to pass upon the second question.

The special exception would result in the erection of a new automobile filling station (eight gasoline dual pumps and islands) in connection with a modern and attractive car wash which will cost between $150,000 and $200,000. It is designed to accommodate 100 cars per hour. It is expected that the facility will have an average of 20 cars

per hour with a normal peak demand not exceeding 40 cars per hour. Under the Zoning Ordinance a car wash is permitted in a C-2 zone as a matter of right. A special exception is required for the installation of the pumps and islands and the use of the R-R land for parking in connection with the use of the facility.

The Chief Zoning Inspector of the Department of Inspections and Permits to the Planning Board and the District Council in his comments upon the application for the special exception, dated September 3, 1969, gave his opinion as follows:

> "The construction of this filling station and car wash in accordance with the plans submitted will not adversely affect the surrounding area."

Then followed three recommendations for specific limitations upon the use of the property and a recommendation for Technical Staff review of the adequacy of the parking requirements prior to the approval of the special exception.

The Zoning Ordinance of Prince George's County provides the following standards for the granting of a special exception:

"28.2 General provisions.

A special exception may be granted when the council finds that:

> "(a) The proposed use is in harmony with the purpose and intent of the General Plan for the physical development of the district, as embodied in this ordinance and in any master plan or portion thereof adopted or proposed as part of said General Plan.
>
> "(b) The proposed use will not affect adversely the health and safety of residents or workers in the area and will not be detrimental to the use and/or development of adjacent properties or the general neighborhood.

"28.3 Special provisions.

"28.317 (o) In addition to the General Provisions of Section 28.2 of this Ordinance, the District Council must make the following findings that the proposed use: (1) will have no detrimental effects on vehicular or pedestrian traffic; (2) is necessary to the public in the surrounding area; and (3) must not restrict the availability or upset the balance of land usage in the area for other trades and commercial uses."

At the hearing of November 5, 1969, by the District Council on the application, the applicant introduced the testimony of an expert land planner who stated that, in his opinion, the proposed use conformed to existing uses and would not be injurious to those who lived and worked in the area. Mr. Wagner, the applicant, testified that there was no other car wash within three miles of the subject property and that there was a need for the proposed facility. He further stated that there could, in his opinion, be no traffic problem because he had approximately three-fourths of an acre of land and could store approximately 40 automobiles at a time, far more than the anticipated demand level. He testified that the primary purpose of the proposed facility was to wash cars and not to pump gas. The owner of the land in the immediate rear of the subject property indicated that he had no objection to the granting of the application.

The District Council, on January 7, 1970, granted the application and stated in the Resolution that it had found:

"* * * that the proposed use is in harmony with the purpose and intent of the general plan for the physical development of the District, and will not affect adversely the health and safety of the residents or workers in the area and will not be detrimental to the use [or] development

564

of adjacent properties or the general neighborhood."

Notice of this final decision of the District Council on the application for the special exception was mailed on February 2, 1970. On March 4, 1970, Charles J. White filed a petition, dated March 3, 1970, for a reconsideration of the decision of January 7, 1970. The petition was filed by Mr. White as chairman of the North Forestville Citizen's Association. It alleged that the opposition to the granting of the application was "based primarily upon the increased traffic congestion which would be created by the proposed business."

On March 5, counsel for the applicant addressed a letter to the District Council objecting to the reconsideration. The District Council, on March 6, granted the reconsideration without a hearing and without giving any reasons for its action.

At the rehearing before the District Council on June 3, 1970, counsel for the applicant objected to the rehearing but was required to put on the applicant's case again. Substantially the same testimony was introduced at the second hearing by the applicant as was introduced by him at the first hearing, although it was in more detail and better documented at the second hearing. The only testimony given in opposition was that given by Mr. White. He read a prepared statement indicating that the North Forestville Citizen's Association objected to the proposal because of the traffic problem, but no expert testimony was produced to substantiate this claim. Curiously enough, Mr. White testified, in response to a question in regard to whether the Citizen's Association had any objection to the filling station, and in fact principally objected to the car wash, that:

"A. If I had a yes or no answer to give to that particular question — to be precise, I think we would not mind a filling station because there are rows of filling stations along there."

Mr. White indicated in his testimony that he had seen the sign on the subject property, advising that there would be a hearing before the District Council on November 5, 1969.

The District Council, on September 29, 1970, disapproved the application. In its Findings of Fact and Conclusions, the District Council stated that there would be, at times, stacking of cars on Marlboro Pike and that the full development of the station even with the imposition of certain conditions "may well result in traffic congestion on Marlboro Pike." There were also findings of lack of need and that the applicant had not met the burden of showing conformance with the specific requirements of the Zoning Ordinance.

On appeal to the Circuit Court for Prince George's County, Judge Mathias in his oral opinion was not impressed by the alleged procedural errors and found that the issues on the reconsideration were fairly debatable thus requiring an affirmance of the decision of the District Council of September 29, 1970. Judge Mathias, however, did state in his oral opinion that if the facility was not to be used as a combination car wash and filling station "the case would be completely void of any evidence to justify a denial of the application for the filling station." Later, he stated:

"Now, the Court is not going to leave this opinion without commenting that there is a very serious question in this case in its opinion as to whether or not this permissible adjacent use or use in conjunction with a special exception for a filling station is justification for the denial of the special exception for a filling station. If the filling station was alone I would say this case is absolutely void of any testimony to deny its appropriate granting. But the applicant creates this problem that it is going to be part car wash and part filling station and that joint use has created the basic decision of the District

Council to determine that it should not be granted."

Section 28.16A, subparagraph (b) of the Zoning Ordinance provides:

"(b) Reconsideration. The district council may, pursuant to a petition for reconsideration or upon its own motion, filed or acted upon within the time set forth in subparagraph (a) of this subsection, reconsider the application on such grounds as may be stated in the petition or motion. The petition, in addition to setting forth grounds for reconsideration, shall have contained therein an affidavit that the same is not filed for the purpose of extending the time of appeal of the action or decision, that there is good and sufficient reason to support the petition and that a copy of it has been served by regular mail, postage prepaid, upon each party who appeared at the public hearing or his spokesman or counsel. An opportunity will be given to the parties named in the record of the public hearing to be heard or to file a response if any member of the district council requests it before the petition or motion is acted on. The district council may act upon the petition for reconsideration with or without a hearing and shall act upon such petition or its own motion within sixty (60) days of the original decision or the same shall be deemed to be affirmed."

The time limited in subparagraph (a) is 30 days "after the date of mailing the notice of the action or final decision of the district council on any application for a special exception * * *."

Inasmuch as the notice of the final decision of January 7, 1970, on the present application for a special ex-

ception was given on February 2, 1970, Mr. White's petition for a reconsideration, dated on March 3, 1970, (the 29th day after the date of mailing of the notice) was filed with the District Council on March 4 — the 30th day, and hence within the time provided in the Zoning Ordinance. As we have observed, counsel for the applicant filed a letter on March 5 objecting to the reconsideration. This letter asserted as one of the grounds that no member of the North Forestville Citizen's Association had attended the original hearing. The District Council granted the requested reconsideration on March 6.

It should be noted that the action of the District Council in regard to reconsideration was *upon the petition* of Mr. White, as chairman of the Citizen's Association, and not "upon its own motion." The minutes of the District Council recite that the "request of Charles J. White, chairman of the North Forestville Citizen's Association, for reconsideration * * * be *granted*." The District Council did not purport to act "upon its own motion" to grant a reconsideration. Under Section 28.16A, subsection (b), already quoted in full, the reconsideration is limited to "such grounds as may be stated in the petition or motion." Inasmuch as only the White petition was filed during the time limited in the ordinance, the District Council was limited to the grounds for reconsideration set forth in that petition. Hence, if no valid petition was presented to the District Council, it had no power under the ordinance to proceed with a reconsideration of its prior decision approving the application, the time for the filing of its own motion for reconsideration having passed without such a motion having been filed.

In our opinion a proper construction of Section 28.16A, subsection (b) requires that a petition for reconsideration be filed *by a party named in the record at the original hearing* pursuant to which the action of the District Council was taken and for which reconsideration is requested. This is indicated by the requirement that an affidavit accompany the petition that it is "not filed for the

purpose of extending the time of appeal of the action or decision." Then, too, the requirement that the petitioner include in his required affidavit that a copy of the petition "has been served by regular mail, postage prepaid, upon *each party who appeared at the public hearing"* strongly suggests that the petitioner is required to be a party who appeared at the public hearing. It is also provided that if requested by a member of the District Council opportunity will be given *"to the parties named in the record of the public hearing* to be heard or to file a response."

To construe subsection (b) as permitting a person, who with notice of the original hearing fails to appear at that hearing and later when the application is granted on the evidence presented at that hearing, to file a petition for reconsideration may well lead to the unreasonable result of requiring the applicant to present his case twice, with attendant confusion, loss of certainty and impairment of finality of determinations by the District Council. If the language of subsection (b) should be thought to be ambiguous in regard to the requirement that the petition for reconsideration be filed by a party or persons present at the original hearing, it is well settled that we should prefer a construction which leads to a reasonable, rather than an unreasonable and absurd result. As Judge Oppenheimer, for the Court, stated in *Sanza v. Maryland State Board of Censors,* 245 Md. 319, 340, 226 A. 2d 317, 328 (1967) :

> " '[T]he construction should be in harmony with the manifest intent of the act and should not lead to an absurdity.' *Gatewood v. State,* 244 Md. 609, 224 A. 2d 677, 682 (1966), and cases therein cited."

See also *Domain v. Bosley,* 242 Md. 1, 217 A. 2d 555 (1966) ; *Germenko v. Public Service Commission,* 226 Md. 295, 173 A. 2d 362 (1961) ; *Frazier v. Warfield,* 13 Md. 279 (1859).

Further, it would appear likely that if it were the legislative intent to permit one not a party to the original hearing to petition the District Council for a rehearing, it would have done so in specific and definite language.

The petition for reconsideration, having been filed by a person not entit¹ed under the Zoning Ordinance to file it, was invalid and ineffective, so that the District Council could not proceed to a reconsideration under that purported petition and hence the subsequent proceedings were ineffective and void.

The appellant strenuously argued before us that, in any event, there was no probative evidence at all at the second hearing which would support the action of the District Council in denying the application for the special exception so that its action was arbitrary, capricious and illegal for this reason, relying upon our decision in *Cason v. Board of County Commissioners for Prince George's County,* 261 Md. 699, 276 A. 2d 661 (1971) and cases therein cited. There is some force in this argument; but, as we have indicated, we do not find it necessary to decide this issue.

> *Order of February 17, 1971, reversed, and case remanded to the Circuit Court for Prince George's County for the entry of an order reversing the decision of the District Council of September 29, 1970, disapproving application No. 2142 of the appellant, Ely Wagner, for a special exception and reinstating the action of the District Council of January 7, 1970, granting that application; the costs to be paid by the appellee.*