# PRINCE GEORGE'S COUNTY, MARYLAND *v.*
# ARUNDEL SUPPLY CORPORATION ET AL.

[No. 318, September Term, 1971.]

*Decided April 17, 1972.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN and SMITH, JJ.

*(Mrs.) Virginia S. Criste, Associate County Attorney,* with whom were *Walter H. Maloney, Jr., County Attorney* and *Jess J. Smith, Jr., Associate County Attorney,* on the brief, for appellant.

*Charles M. Cockerill* for appellees.

BARNES, J., delivered the opinion of the Court.

A single, narrow question is presented to us in this appeal from the Circuit Court for Prince George's County (Bowie, J.), *i.e.,* whether the court erred in holding that the special exception granted to the predecessor (Lorenzo F. Thompson) of the appellee, Arundel Supply Corporation, a Maryland corporation (Arundel), for the extraction of sand and gravel expires on June 5, 1972, rather than on September 29, 1970.

The present case arose as an aftermath of our decision in *Cason v. Board of County Commissioners for Prince George's County,* 261 Md. 699, 276 A. 2d 661 (1971). In *Cason* we, on May 5, 1971, affirmed an order of the Circuit Court for Prince George's County, which had affirmed the action of the Board of County Commissioners for Prince George's County, sitting as the District Council (District Council), granting a special exception to Lorenzo F. Thompson, the owner of the subject property, approximately 38 acres in an R-R zone (Rural Residential) in Prince George's County, for use as a sand and gravel pit, subject to seven conditions. These seven conditions were directed to regulating and limiting the operations for the removal of sand and gravel from the subject property and are set out in full in the opinion in *Cason.* Condition 7 is the one specially involved in the present case and provides:

"7. That the special exception shall expire one

year from date. No operations shall be allowed during December 10, 1970, through March 10, 1971."

Other facts in regard to the granting of the special exception appear in the opinion in *Cason* and need not be repeated here.

On October 26, 1971, Arundel and Ben Woodward (President of Arundel), for himself and on behalf of all other employees of Arundel, similarly situated, filed a bill of complaint in equity in the lower court against Prince George's County for declaratory, injunctive and other relief. After the identification of the parties, it was alleged that Arundel was engaged in extracting sand and gravel from the subject property owned by Lorenzo F. Thompson until October 2, 1971, this extracting being carried out pursuant to a special exception granted by the District Council to Thompson. It was then alleged that the Zoning Inspector of the County by letter of September 2, 1971, advised Arundel, through its attorney, that September 29, 1971, was considered by his office to be the final day of extraction activities pursuant to the one-year period allowed in the special exception; and Arundel was advised by a subsequent letter from the Acting Chief Zoning Inspector that the extraction of sand and gravel at the subject property was to cease by October 2, 1971, or Arundel would be considered to be in violation of Sec. 13.11 of the County Zoning Ordinance.

The granting of the special exception by the District Council on July 31, 1970, and the appeal by Cason to the circuit court on August 24, 1970, were alleged, as well as the request by Cason for a stay of the effect of the decision in the appeal to the circuit court. On September 3, 1970, it was alleged, "all parties to the appeal stipulated to a stay in open court." Thereafter, there was a hearing and the action of the District Council was affirmed by the circuit court, Judge Powers indicating, at least by inference, in his oral opinion that the one-year period for sand and gravel extraction was intended by the Dis-

trict Council to contemplate a prospective one-year period of operations, without diminution of eligible time elapsed from July 31, 1970, to the "stay executed by the parties on September 3, 1970."

It was then alleged that Arundel did not receive a use and occupancy permit for the extraction of sand and gravel from the subject property until December 19, 1970; that a new grading ordinance was enacted by the County on October 13, 1970, effective January 11, 1971, requiring a grading permit for the operation in addition to the use and occupancy permit; that on March 26, 1971, the Grading Control Engineer for the County informed Arundel that its application for a grading permit had been denied by the Maryland National Capital Park and Planning Commission because the special exception was "pending result of court action"; that relying on this representation, Arundel did not begin full scale extraction operations until June 28, 1971, the decision of this Court in *Cason* having become final on June 4, 1971; that due to the high cost of complying with the restoration requirements imposed by the terms of the conditions of the special exception, it was not "economically feasible" for Arundel to begin extraction unless at least a year's period (except the period from December 10 to March 10) was allowed for the extraction and Arundel could not be certain that such a full one-year period would be allowed until the decision of this Court in *Cason* became final; and, that if the County continued to enforce October 2, 1971, as the final day for sand and gravel extraction operations, Arundel would sustain great loss and irreparable injury and be deprived of the right granted to it by the District Council for a one-year period.

The prayers for relief were (1) a declaratory judgment be granted determining the date of expiration of the special exception, (2) for an ex parte injunction to enjoin enforcement of October 2, 1971, as the expiration date until an adversary hearing on the propriety of the injunction could be held, without the requirement for

filing a bond by Arundel, (3) for a show cause order and (4) for other relief.

A comprehensive affidavit of Ben Woodward supporting the bill of complaint was filed and a temporary injunction restraining the County from enforcing the October 2, 1971, alleged expiration date was filed on October 26, 1971, the order of that date also providing for service of the bill, affidavit and order with the right to the County to move for a hearing on not more than two days notice and setting the case for hearing on the merits on November 1, 1971.

The County filed a motion to dissolve the interlocutory injunction on October 29 and filed its answer to the bill of complaint in open court on November 1, 1971. The answer generally admitted the facts alleged in the bill but denied the conclusions and inferences alleged. Also on November 1 the County filed a demurrer to the bill of complaint alleging various grounds.

At the hearing on November 1, 1971, Ben Woodward testified in regard to the facts set forth in the bill of complaint and in his affidavit. Various documents were introduced into evidence. Francis J. Aluisi and Francis B. Francois, two members of the District Council (Mr. Aluisi was Chairman at that time.) who voted in favor of granting the special exception, subject to the seven conditions, were permitted to testify, over objection, that they understood the one-year condition to mean that a full year, less the three-month period, would be allowed for the removal of the sand and gravel.

A transcript of the proceedings before Judge Powers on September 29, 1970, was also considered. After indicating in his oral opinion that it appeared to him that the granting of the special exception was in the area of being fairly debatable, Judge Powers stated:

> "It is my understanding that at the time of an earlier hearing on the question of a stay it was agreed by counsel that the one-year provision imposed by the District Council to end one

year from date would be extended so that the effective date of the one year period would be at the time of the decision of the Circuit Court with respect to the case. So therefore, on the basis of the stipulation in which all counsel were involved, binding their clients, the special exception will be limited to a period of one year dating from today. The same provision as to the extraction of sand and gravel being prohibited between December 10, 1970 and March 10, 1971 will be applicable."

Mr. Smith, counsel for the County, then stated:

"If Your Honor please, I believe perhaps I misunderstood. The initial stipulation was that the one-year period was to begin to run after any subsequent appeal or anything of that type."

The following was then stated:

"THE COURT: I guess it was after the action of the Court became final.
"MR. SMITH: Yes.
"THE COURT: I will amend what I said. So beginning the one year from the time the action of the Court is final. In other words, if there is no appeal filed in this case within thirty days then it would be thirty days from today the one-year period would begin. If an appeal is filed and then if the Circuit Court is affirmed it would begin thirty days from the mandate of the Court of Appeals.
"MR. NALLS (counsel for Cason) : If an appeal is filed and no stay is granted, shouldn't the effective date be from the time they are allowed to start work? Do you see what I am getting at?
"THE COURT: The operator has a perfect right to go ahead and use it today if he wants to.

"MR. NALLS: Unless the Court of Appeals would grant a stay.

"THE COURT: Unless there is a stay. If there is no stay and he begins to operate it would be from the beginning of the operation. If he voluntarily does nothing then it would be after a mandate. If he wants to go ahead and a stay is granted, of course that would extend the time. If a stay isn't granted, then the time would begin to run."

The evidence taken before Judge Bowie on November 1, 1971, established that the mandate of this Court in the *Cason* case became final on June 4, 1971, and that Arundel had actively begun full scale excavating operations on June 28, 1971.

Judge Bowie, on November 9, 1971, filed his written opinion in which he expressed the view that the one-year period in Condition 7 to the special exception was intended to allow a one-year period of excavation (less the three-month period) and, as a result of the hearing before Judge Powers, that one-year period was to begin to run from October 29, 1970, the date of finality of his opinion of September 29, 1970, if Arundel began excavating operations and if there were no appeal to this Court; but if such an appeal were taken, then the one-year period should begin (if Judge Powers' order were affirmed) when the mandate of this Court became final.

Judge Bowie, accordingly, passed an order on November 9, 1971, declaring that the one-year period should come to an end on June 5, 1972, including suspension of digging operations from December 10, 1971, to March 10, 1972, during which time Arundel would be free to complete the work without interference from public authority so long as it otherwise complied with the law.

In our opinion, Judge Bowie's declaration in his order was correct and we will affirm the order.

The County concedes that by virtue of Section 59-85 (e) of the County Code, the action in granting the special

exception could be appealed to the circuit court and could be subject to a stay ordered by that court. It claims, however, that the circuit court did stay the effect of the special exception by a stipulation of the parties from September 3, 1970, to September 29, 1970, the date of the hearing before Judge Powers, but not thereafter. However, counsel for the County stated that the effect of the initial stipulation was that the one-year period "was to begin to run after any subsequent appeal or anything of that type." Judge Powers then interpreted the stipulation to include the one-year period to begin 30 days from the mandate of this Court if the circuit court was affirmed. Judge Powers stated that if the owner "voluntarily does nothing then it would be after a mandate." Arundel decided "voluntarily to do nothing" until after the mandate of this Court became final so that the one-year period, less the three-month period, then began, as Judge Bowie so found and declared. We do not conclude that his findings of fact in this regard were clearly erroneous—Maryland Rule 886—or that his declaration to this effect was in error.

Apart from Judge Powers' ruling and interpretation, we pointed out in *Cason* that at the hearing before the District Council on April 24, 1970: "It was estimated that the *excavation would take approximately one year.*" (Emphasis supplied; 261 Md. at 703, 276 A. 2d at 663.) Again, we stated that: "The problems relating to pollution, traffic and the *operation* under the special exception for one year (vs. a permitted five year) period *during which it may continue* were all considered by the District Council *and the conditions appear to meet those problems.*" (Emphasis supplied; 261 Md. at 708, 276 A. 2d at 665.) Although the beginning date of the one-year period was not briefed or argued before us in *Cason*, it is apparent that we assumed that the one-year period was intended to give the owner of the subject property that time (less the three-month exclusion) for conducting the excavation operation. When the grant of the special exception and the seven conditions are considered

as a whole, the words "expire one year from date" followed by the words "no *operations* shall be allowed" (Emphasis supplied.) during the three-month period may well indicate an intention by the District Council that the words "expire one year from date" mean one year from the date *the operations begin* in normal course, rather than the date of the granting of the special exception on July 31, 1970. At least, the words "from date" are ambiguous in this regard and the contemporaneous and practical construction of those words indicate that they mean from the date of the beginning of the excavating operations in normal course, rather than from the date of the granting of the special exception by the District Council, as *now* contended for by the County. See *Falcone v. Palmer Ford, Inc.*, 242 Md. 487, 494, 219 A. 2d 808, 810-11 (1966) and *Gallagher's Estate v. Battle*, 209 Md. 592, 604, 122 A. 2d 93, 99, *cert. denied*, 352 U. S. 894, 77 S. Ct. 133, 1 L.Ed.2d 87 (1956), applying the same basic rule in regard to ambiguous contracts.

We believe that any construction of Condition 7 other than one allowing for a full year's operation less the three-month period would lead to impractical and unreasonable results. The language in Condition 7 that "[n]o operations shall be allowed during December 10, 1970, through March 10, 1971," we believe only evidences the fact that the District Council demanded a three-month hiatus from excavation, and that it assumed that the excavation would proceed forthwith.

This interpretation of the intended meaning of those words in Condition 7 is consistent with the testimony of Commissioners Aluisi and Francois. We have not found it necessary, however, to rely upon their testimony in this regard or to pass upon any questions concerning the admissibility of their testimony into evidence.

> *Order of November 9, 1971,*
> *affirmed, the appellant to*
> *pay the costs.*